O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| ARTHUR A. TABACCO, | ) | Case No. EDCV 11-1803-MLG |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff Arthur A. Tabacco seeks judicial review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

I. **BACKGROUND**

Plaintiff was born on November 20, 1950, and was almost 60 years old at the time of the administrative hearing. (Administrative Record ("AR") at 50.) He completed one year of college and has work experience as a fire alarm systems designer and truck mechanic. (AR at 30, 45.) Plaintiff filed his application

for benefits on October 21, 2008, alleging disability beginning May 15, 2008, due to neck, spine, and knee problems, rheumatoid arthritis in his hands and most joints, and HIV. (AR at 60.) The Social Security Administration denied Plaintiff's application initially on February 18, 2009. (AR at 52.)

A de novo hearing was held before Administrative Law Judge ("ALJ") Sharilyn Hopson on May 4, 2010. (AR at 27.) On June 10, 2010, the ALJ issued a decision denying Plaintiff's application. (AR at 16-20.) The ALJ determined that although Plaintiff suffers from degenerative disc disease ("DDD")[1] and HIV, he has the residual functional capacity ("RFC") to perform work at the light exertional level. (AR at 19-20.) The ALJ concluded that Plaintiff is capable of performing his past relevant work as a Computer-Aided Design ("CAD") drafter/designer as it is actually and generally performed, and that he was therefore not disabled. (AR at 20.) The Appeals Council denied review on September 15, 2011. (AR at 1.)

Plaintiff commenced this action for judicial review and the parties filed a Joint Stipulation ("Joint Stip.") of disputed facts and issues on May 31, 2012. Plaintiff contends that the ALJ erred in evaluating his credibility, and failed to give appropriate weight to the opinion of his two treating physicians and an examining orthopedist. (Joint Stip. at 11, 16.) Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further administrative proceedings. (Joint Stip. at 20.) Defendant requests that the ALJ's decision be affirmed or, if the Court finds

---

[1] "DDD" appears frequently throughout Plaintiff's medical record as an abbreviation for degenerative disc disease, so this Court will use the abbreviation going forward.

2

that the ALJ committed reversible error, that the Court remand for further administrative proceedings, given that this case was decided at step four and further testimony would be required. (Joint Stip. at 20.)

II.  **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

III.  **DISCUSSION**

 A.  **The ALJ Improperly Evaluated Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to properly evaluate

3

1    his credibility. At the hearing, Plaintiff described his severe

2    back and neck pain, and arthritis in his hands, feet, knees, and

3    elbows. (AR at 30, 41.) In addition, Plaintiff said he experiences

4    dizziness, drowsiness, and fatigue. (AR at 38-40.) A typical day

5    for Plaintiff consists of lying in bed on a heating pad and massage

6    unit. He is unable to sit at the computer to work, and cannot lift

7    anything that requires reaching overhead or bending down. (AR at

8    39-41.) He stated that despite his condition, he can lift a gallon

9    of milk and take basic hygienic care of himself, but does not do

10   any housework. (AR at 34-35.) These physical limitations described

11   by Plaintiff were explicitly noted by his examining physician as

12   correlating with objective findings in Plaintiff's medical record.

13   (AR at 446.)

14      To determine whether a claimant's testimony about subjective

15   pain or symptoms is credible, an ALJ must engage in a two-step

16   analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)

17   (citing *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir.

18   2007)). First, the ALJ must determine whether the claimant has

19   presented objective medical evidence of an underlying impairment

20   which could reasonably be expected to produce the alleged pain or

21   other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the

22   claimant produces objective medical evidence of an underlying

23   impairment, an adjudicator may not reject a claimant's subjective

24   complaints based solely on a lack of objective medical evidence to

25   fully corroborate the alleged severity of pain." *Bunnell v.*

26   *Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the

27   extent that an individual's claims of functional limitations and

28   restrictions due to symptoms are reasonably consistent with the

objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[2]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. *Id.* (citations omitted).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR at 20.) However, the ALJ rejected Plaintiff's statements "concerning the intensity, persistence and

---

[2] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

limiting effects of these symptoms" to the extent they are
inconsistent with the RFC allowing for work at the light exertional
level. (AR at 20.)

Because there was no evidence of malingering, the ALJ was
required to provide clear and convincing reasons for rejecting
Plaintiff's testimony. Despite this requirement, the ALJ identified
no reason for rejecting Plaintiff's testimony. Aside from the
conclusory, boilerplate language quoted above, there is neither
factual analysis nor any specific reason listed in the ALJ's
decision for finding Plaintiff not credible. (AR at 16-20.)
Therefore, because the ALJ failed to provide clear and convincing
reasons for rejecting Plaintiff's testimony, the credibility
determination is not supported by substantial evidence. *See*
*Robbins*, 466 F.3d at 883.

**B.   The ALJ Failed to Give Appropriate Weight to the Opinions
of the Treating and Examining Physicians**

Plaintiff next contends that the ALJ improperly rejected the
work-related limitations assessed by his treating and examining
physicians in finding that Plaintiff could perform his past
relevant work as a CAD drafter/designer. This allegation of legal
error is also correct.

///

///

**1. Applicable Law**

The Commissioner is directed to weigh medical opinions based
in part on their source, specifically, whether proffered by
treating, examining, or non-examining professionals. *Lester v.*
*Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Generally, more weight

is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Similarly, more weight is generally given to the opinion of a source who has examined the patient than someone who has not done so. 20 CFR § 404.1527(d)(1).

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence in the record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830. If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests on independent clinical findings).

**2. Opinions of the Examining and Treating Physicians**

The ALJ rejected the opinions of treating physicians Drs. Pecchia and Damodaran, and examining physician Dr. Styner. Instead, the ALJ gave "considerable weight" to the State Agency reviewing

7

physicians, none of whom examined Plaintiff. (AR at 20.)

The record indicates that Plaintiff had been seen by his primary care physician, Gregory Pecchia, D.O., since at least March of 2008. (AR at 268-73, 313.) Dr. Pecchia diagnosed Plaintiff with DDD and Polyarthropathy involving multiple sites, complicated by Plaintiff's HIV positive status. (AR at 268, 313.) Dr. Pecchia described this condition as "prohibiting" Plaintiff from standing, lifting, carrying, or sitting for prolonged periods of time. (AR at 313.)

Plaintiff has also been treated by Dr. Chitra Damodaran, a specialist in medicine and infectious disease, since January of 2009. (AR at 523-29, 315-429.) An MRI scan of Plaintiff's cervical spine from June 7, 2007 showed DDD resulting in spinal stenosis and posterior central disc herniation. (AR at 215-16.) A radiology report from December 30, 2009 corroborated the diagnosis of Plaintiff's spine degeneration and herniation. (AR at 375.)

On December 8, 2009, Dr. Damodaran noted that x-rays showed severe degenerative joint disease, and observed that Plaintiff could hardly stand up straight, and was bent over and limping with pain. (AR at 328.) An MRI of Plaintiff's lumbar spine on December 29, 2009, showed multi-level degeneration and herniation. (AR at 432.) Dr. Damodaran noted that Plaintiff's condition - herniated disc with DDD and radiculopathy - causes back pain radiating into his legs, such that Plaintiff would be unable to sit more than three hours a day, stand or walk no more than two hours a day, and lift or carry no more than five pounds occasionally. (AR at 523-29.) Dr. Damodaran also determined that Plaintiff's pain was severe enough to "frequently" interfere with his attention and

concentration, and would likely cause him to miss more than three workdays a month. (AR at 527.)

On December 18, 2009, Plaintiff was examined by orthopedist James Styner in connection with his disability claim. (AR at 438-49.) Dr. Styner's examination revealed disc herniation, a history of low back injury, a halting gait, and restricted lumbar flexion. (AR at 440-47.) Further, Dr. Styner reviewed Plaintiff's records, including his MRIs, and estimated that Plaintiff could sit for up to three hours a day and stand or walk for up to two hours a day, with the need to move around at forty-five minute intervals for fifteen minutes at a time; he could carry up to five pounds occasionally; he would not be able to keep his neck in a constant position such as looking at a computer screen or down at his desk, and his symptoms would "frequently" interfere with his attention and concentration; Plaintiff would need to take unscheduled breaks two to three times a day and would likely miss work more than three times a month. (AR at 448, 456-57.)

///

///

///

### 3. Analysis

The ALJ rejected the residual functional capacity assessments of Drs. Pecchia, Damodaran, and Styner, but failed to state adequate reasons for doing so. (AR at 20.) Because the opinions of the treating and examining physicians were contradicted by the State Agency reviewing physicians, the ALJ was required to give specific and legitimate reasons supported by substantial evidence in rejecting them in favor of those of the reviewing physicians.

*See Lester*, 81 F.3d at 830.

Instead, the ALJ merely stated that the doctors' "very restrictive limitations [are] unsupported by objective medical, clinical, laboratory, or radiological findings." (AR at 20.) This brief, unreasoned dismissal is both factually inaccurate and legally insufficient. Indeed, based on the record, the physicians' assessments were arbitrarily rejected. Plaintiff's medical record includes numerous findings of "herniation" verified by objective tests including MRI, x-ray, and radiology reports that support the physicians' opinions. These objective tests undermined the ALJ's conclusion that any disc herniation, spinal stenosis, and cord compression are undocumented.[3] (AR at 215, 375, 432, 440.) Based on these objective findings, all three doctors found that Plaintiff's impairments cause significant limitations on his ability to work. (AR at 313, 451-58, 523-29.) The ALJ's statement that the doctors' assessments are unsupported by objective findings is flatly contrary to the medical record. Thus, the ALJ's rejection of the opinions of Drs. Pecchia, Damodaran, and Styner is not substantially supported.

It is true that in general, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *See Batson v. Commissioner of Social Security*

_____

[3] The ALJ stated that MRI studies of Plaintiff's cervical and lumbar spines from December 30, 2009 "failed to document any disc herniation, spinal stenosis, or cord compression." (AR at 19.) However, the record shows that Plaintiff's lumbar spine MRI from December 30, 2009 indicates "herniation of L5-S1 in the midline and slightly eccentric to the right." (AR at 432.)

*Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *see also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). However, none of the doctors' opinions were brief or conclusory. The record contains detailed notes from Dr. Pecchia (AR at 268-73), progress notes and a lengthy questionnaire from Dr. Damodaran (AR at 523-29, 327-31), and thorough analysis and copious notes from Dr. Styner (AR at 438-58), all supported by objective medical findings.

Of course, "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal citations omitted) (emphasis added). However, as discussed above, the ALJ also improperly discounted Plaintiff's subjective complaints regarding the nature and extent of his functional limitations.

Accordingly, the ALJ erred in rejecting the opinions of Drs. Pecchia, Damodaran, and Styner without specific and legitimate reasons supported by substantial evidence in the record.

**IV. Conclusion**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In this case, remand for a new hearing is appropriate because of the need for a complete and thorough determination of Plaintiff's testimony, and to properly consider

the opinions of Drs. Pecchia, Damodaran, and Styner. Moreover, if it is found that Plaintiff cannot perform his past work, the ALJ must still determine whether there is any other work in the economy that Plaintiff can perform.

Accordingly, the decision of the Commissioner is reversed; and this action is remanded for further proceedings consistent with this opinion and order.

Dated: July 13, 2012

_____
Marc L. Goldman
United States Magistrate Judge

12